The CRUMMER COMPANY, a corporation, and One Other, Plaintiffs,

v.

Jessie Ball DU PONT, et al., as Trustees, etc., et al., Defendants.

No. 313.

United States District Court
N. D. Florida,
Tallahassee Division.

Feb. 13, 1957.

Francis P. Whitehair DeLand, Fla., Chris Dixie, Houston, Tex., Warren E. Hall, Jr., DeLand, Fla., for plaintiffs.

McCarthy Crenshaw, Jacksonville, Fla., Atkinson & Atkinson, Tallahassee, Fla., Maguire, Voorhis & Wells, and W. H. Poe, Orlando, Fla., L. W. Cooperman, St. Petersburg, Fla., Fleming, Scott & Botts, Jacksonville, Fla., Adair, Ulmer, Murchison, Kent & Ashby, Jacksonville, Fla., W. H. Rogers and Taylor Jones, Jacksonville, Fla., Donald Russell, Columbia, S. C., W. Wallace Shafer, Lakeland, Fla., R. W. Ervin, Atty. Gen., of Florida, for defendants.

DE VANE, Chief Judge.

This action was instituted by plaintiffs under the Anti-Trust Laws of the United States. Plaintiffs charge that various persons named as defendants, together with other persons not named as defendants, conspired with each other in violation of the Anti-Trust Laws to injure, damage and destroy plaintiffs in their business.

This suit was instituted on December 19, 1949. The complaint charges that the conspiracy between defendants to put the plaintiffs out of business was formed early in 1941. Plaintiffs charge the defendants with the commission of approximately forty overt acts of conspiracy between that date and June 30, 1946.

The case came on for hearing before the Court on a motion to dismiss filed by all the defendants save three on the ground that the suit was barred by the Statute of Limitations. The Court, after full hearing on said motions to dismiss, dismissed this case on the ground that same was barred by the Statute of Limitations. The Court held the three year statute, F.S.A. § 95.11(5) (a) applicable.

The three exceptions referred to above were Post Office Inspector Edward J. Mansfield, Walter Gaul and Cummer Cypress Lumber Company. The Court granted the motions of these defendants to dismiss on the ground that they had been improperly joined as co-conspirators and party-defendants in the case. Crummer Co., v. Du Pont, D. C., 117 F.Supp. 870.

Promptly upon the Court's opinion and order coming down dismissing this case on the ground it was barred by the Statute of Limitations, plaintiffs applied to the Court for authority to amend the complaint, charging more specifically acts of fraudulent concealment of their activities by the defendants, and the Court gave to plaintiffs the right to file such amendment. Upon further hearing upon the amended complaint, the Court adhered to its former ruling and dismissed the action on the ground its was barred by the Statute of Limitations.

On appeal the Court of Appeals affirmed this Court in respect of every order it had entered in the case, save and except on the question of the fraudulent concealment of the alleged overt acts charged by plaintiffs. The Court held that plaintiffs were entitled to a jury trial on this specific issue. Crummer Co. v. Du Pont, 5 Cir., 223 F.2d 238.

When the case came back to this Court, an order was entered setting this case for trial before a jury on the single issue of fraudulent concealment and the case finally came on for trial upon this issue.

As heretofore stated, the complaint charges defendants with the commission of approximately forty overt acts in the execution of the alleged illegal conspiracy. The complaint named public authorities of the State and Federal Governments as the only visible activity behind which plaintiffs claim the alleged overt acts were committed. These activities of public authorities behind which the defendants are alleged to have operated were grouped and classified into five groups by this Court in its opinion in this case, 117 F.Supp. 874, and need not be repeated here.

When the Court began holding pre-trial conferences to define the issues that would be submitted to the jury and to require counsel for the respective parties to designate those parts of the voluminous discovery depositions and exhibits they desired to use in the trial of the single issue of fraudulent concealment, plaintiffs announced the abandonment of

all alleged overt acts except the fifth classification made by this Court as follows:

"The alleged investigation authorized by the Attorney General of the United States, which led to the return of two indictments against R. E. Crummer & Company and others in the District Court of the United States, District of Kansas, Second Division, in August, 1944."

This case was thereupon readied for trial upon this limited issue of alleged fraudulent concealment and counsel for the respective parties cooperated admirably in designating such parts of the voluminous discovery depositions and exhibits each party desired to use at the trial; in fact, they cooperated in this respect so completely that no counsel found fault with the designations made by any opposing counsel.

In connection with the limited designation of the issues by plaintiffs, it should be kept in mind that plaintiffs named as co-conspirators Post Office Inspector Edward J. Mansfield, who was named as a party-defendant in the complaint, and Thomas B. Hart, Robert T. Wright, George Ruetell, F. Joseph Butler and Alexander J. Brown, Jr., employees of the Securities and Exchange Commission, were not made party-defendants because they resided beyond the jurisdiction of this Court. As stated above, this Court by appropriate order dismissed Post Office Inspector Mansfield as a party-defendant and the Court of Appeals affirmed this Court in that action. So this case went to trial before the jury on the single issue of fraudulent concealment of the alleged conspiratorial activities between the named defendants, or some of them, and those Federal Government employees conducting the investigations, which investigations resulted in the return of the two indictments against the plaintiffs and others in Kansas.

The evidence in this case discloses no conspiratorial overt act by any of the defendants (with one noted exception to be referred to later) with any Government employee. All it discloses is that some of the Government employees during their investigations contacted a few of the defendants and solicited certain specific information from them. There was nothing improper or unusual brought out in the evidence in connection with these interviews being carried on by the Government employees. Moreover, these contacts were generally known by plaintiffs long before June 30, 1946.

The one noted exception is that of Walter P. Fuller. The evidence in the case discloses that the House of Representatives of Florida in the 1941 Session passed a resolution authorizing the appointment of a Committee to investigate into the activities of bond houses dealing in municipal bonds in the State of Florida. This Committee was reactivated early in 1942 by the Honorable Spessard Holland, Governor, and Walter P. Fuller was appointed as the Investigator for this Committee. The Committee was to complete its investigation in time to make a report to the 1943 Session of the Legislature and to the Governor. The evidence shows that Fuller was an extremely active Investigator for his Committee, apparently limiting his activities to the Crummer Companies and he prepared for his Committee and the Committee submitted to the Governor and to the Legislature a report touching upon his investigation of these companies. R. E. Crummer testified extensively as to his relationship with Fuller dating back many years and as to the animosity Fuller held against him and his companies. The activities of Fuller as an Investigator for the Governor and the House Committee became fully known to plaintiffs when the Committee filed its report with the Governor and the Legislature early in 1943.

The investigations of the Post Office Department and the Securities and Exchange Commission were just getting under way, according to the testimony in the case, when Fuller was actively engaged in his investigation for the

Legislative Committee and for the Governor of Florida. Fuller learned of this investigation through contacts he made with others during the course of his investigation for the Legislative Committee and he sought an interview with Post Office Inspector Mansfield, advised Mansfield of his activities for the Legislative Committee and the Governor and offered to supply Mansfield with any information in his possession that Mansfield might desire. There is no evidence in the case that any of the other named defendants had anything whatever to do with Fuller's activities in behalf of the Governor and his own Committee, or in the supplying of information to the Federal employees.

Fuller was subpoenaed to appear before the Grand Jury in Kansas and gave damaging testimony against plaintiffs, but there is no testimony in the record in this case that supports the allegations of the complaint that Fuller was a part of the alleged duPont-Wheeler-Pierce conspiracy. And on this record they cannot be held responsible for any of Fuller's activities as an Investigator for the State of Florida or in the contacts he solicited from and had with the Federal employees during the course of their investigations, which led to the return of the two indictments against plaintiffs in Kansas.

The great preponderance of the evidence discloses that plaintiffs were fully aware of the activities of Fuller and of the Federal Investigators, including their contacts with the named defendants, all the while the investigations were going on and this knowledge and information was most effectively used by the plaintiffs in their arguments to Assistant Attorney General T. Lamar Caudle and the panel of attorneys in his office that he created at plaintiffs' request to pass upon the question as to whether or not the indictments against plaintiffs should be dismissed. The record in this case is full of information supplied Assistant Attorney General Caudle by plaintiffs on this question. The Statute of Limitations, therefore, was effectively in operation on all these matters save one from the date the moratorium act expired on June 30, 1946, Act Oct. 10, 1942, 56 Stat. 781, as amended June 30, 1945, 59 Stat. 306, 15 U.S. C.A. § 16 note.

The one exception to the statement just made above relates to one act of defendants, Roger L. Main and Howard S. Wheeler. The evidence in this case shows that on May 21, 1941, these defendants filed with the Post Office Department in Washington, D. C., a memorandum with certain papers attached as exhibits, charging irregularities in connection with the handling of certain bonds of Lee County, Florida, for which R. E. Crummer and Company was fiscal agent at the time, and that thereafter on May 31, 1941, defendant, Roger L. Main, wrote a letter to the Post Office Department at the request of the Department formalizing these charges. Both Main and Wheeler testified that neither disclosed to anyone save probably Wheeler's business associate, Loomis C. Leedy, that this memorandum had been filed with the Post Office Department by them until after the Post Office Department itself made the disclosure.

It is alleged by plaintiffs and admitted by defendants, and the evidence shows, that plaintiffs had no knowledge of the above mentioned activities of the defendants, Main and Wheeler, until December 27, 1946. This date is within three years of the bringing of this suit. The Court held in this case, and so instructed the jury, that the filing of this memorandum by defendants, Main and Wheeler, with the Post Office Department constituted no act of conspiracy and that the failure of these defendants to disclose that they had filed said memorandum to anyone prior to December 27, 1946, did not constitute an act of fraudulent concealment. The Court held that it is the duty of every citizen to report to the appropriate department of the

United States Government any violation of the Federal laws of which he has any knowledge, and that the activities of Main and Wheeler in filing the memorandum above mentioned were not wrongful or illegal in any respect. The Court further held and charged the jury that it was against Postal Regulations for the Post Office Department to make any disclosure with reference to this memorandum until the Post Office Department investigation had been terminated and the two indictments brought against plaintiffs had been dismissed. The evidence shows that the disclosure was in fact made to a United States Senate Subcommittee after the two indictments against plaintiffs had been dismissed. The Court, however, in this case went on to instruct the jury that the activities of Main and Wheeler in filing this memorandum with the Post Office Department may be considered by the jury in determining whether the defendants are guilty of other overt acts which they concealed from plaintiffs.

It appears from this record that plaintiffs rest their entire case of fraudulent concealment on the act of Main and Wheeler in filing the memorandum with the Post Office Department on May 21, 1941, and if the Court is in error as to the law on this issue, then fraudulent concealment as alleged has been fully established by the plaintiffs as to this one act.

Near the conclusion of the trial of this case, counsel for plaintiffs attempted to again inject into the case the issue as to whether the activities of Walter Gaul and the Cummer Cypress Lumber Company in joining in the suit with the Board of Administration in a Pasco County case was barred by the Statute of Limitations. This Court and the Court of Appeals held in the two opinions referred to above that the alleged overt acts charged by plaintiffs against Gaul and the Cummer Cypress Lumber Company with reference to this litigation were not conspiratorial acts and the

Court reaffirmed those holdings in this case.

■ At the conclusion of all the testimony of plaintiffs, counsel for defendants filed and pressed a motion for a directed verdict, which the Court promptly denied. Then again at the conclusion of all the evidence in the case and after all the parties had rested, counsel for defendants renewed their motion for a directed verdict. The Court held this motion under advisement until after the case had been submitted to the jury. After almost a full day of deliberation divided into two parts, the jury reported to the Court that it was in irreconcilable disagreement and unable to reach a verdict. Upon the Court being so advised by the Foreman of the jury, the Court promptly directed a verdict for defendants and announced to the jury at the time its reasons for doing so. After the verdict had been returned by the jury at the Court's direction, counsel for plaintiffs excepted thereto and insisted that the Court was without authority to direct a verdict in the case inasmuch as it held a mandate from the Court of Appeals to submit the issue of fraudulent concealment to a jury and this mandate of the Court of Appeals deprived this Court of its authority to direct a verdict in the case. The Court held the point was not well taken and affirms that holding here. This Court certainly did not lose its power to enter a judgment notwithstanding the verdict in this case had a verdict been returned for plaintiffs by the jury and assuming such power to exist in the Court, the Court certainly possessed authority to proceed in the matter in the simple way of directing the jury to return a verdict in the case.

■ The evidence in the case is totally insufficient to sustain plaintiffs' allegations of fraudulent concealment and the verdict directed by the Court brings this long, protracted litigation to an appropriate end. A final judgment dismissing this case in conformity with this Memorandum-Decision will be entered herein.